SHULL v. WALRATH & SHERWOOD LUMBER COMPANY.

Opinion delivered March 2, 1925.

1.  TRIAL—ARGUMENTATIVE INSTRUCTION.—An instruction in an action for breach of a contract for the sale of a carload of lumber, that, even though the buyer was diligent in corresponding with the seller in relation to the claim that the lumber did not comply with the order, the seller's failure to answer all letters was not an admission of liability, held properly refused as being argumentative.

2.  SALES—INSPECTION OF LUMBER—INSTRUCTION.—An instruction that if the seller of a carload of lumber agreed to its inspection and the buyer in compliance therewith had the lumber inspected the seller would be bound by the inspection and liable for the costs thereof, unless the seller withdrew the agreement, and that the burden was on the seller to prove such withdrawal held correct.

3.  SALES—BREACH OF CONTRACT—EVIDENCE.—In a buyer's action for damages for breach of a contract to deliver a car of lumber of a certain grade, admission of the correspondence between the buyer and a lumber dealers' association and between the buyer and its customer was not error where the jury were told not to consider such correspondence in determining whether the lumber complied with the contract.

Appeal from Lonoke Circuit Court; George W. Clark, Judge; affirmed.

Trimble & Trimble, for appellant.

A letter properly mailed is presumed to reach its destination in due course of mail. 127 Ark. 498; 98 Ark. 389; 10 R. C. L. 352.

Chas. A. Walls, for appellee.

After an agreement has been made to arbitrate, it cannot be defeated by a change in mind of one of the parties. 76 Ark. 153; 132 Ark. 215; 28 Ark. 519; 36 Ark. 317. The action of the arbitrator is final and is enforceable. 96 Ark. 410; 83 Ark. 136; 88 Ark. 213; 79 Ark 506; 88 Ark. 557; 170 Pac. 360; 221 Fed. 612; 165 Cal. 497; 133 Pac. 289; 107 Md. 146; 48 Pa. 61.

WOOD, J. In March, 1922, one B. H. Beverstock, acting for the appellee, Walrath & Sherwood Lumber Company, of Omaha, Nebraska, ordered a carload of

lumber from the appellant, O. L. Shull, of Lonoke, Arkansas, to be shipped to the appellee at Dallas, South Dakota. In compliance with this order, and as directed by the appellee, the appellant, on April 16, 1922, shipped a carload of lumber to J. H. Smith Lumber Company at Dallas, South Dakota. Beverstock also wrote appellant that his customer "wanted a nice car of clear white oak, wagon stock." When the car arrived at its destination, the Smith Lumber Company notified the appellee that the car was not up to the grade ordered, and that it would not be accepted on that account. The appellee, on the 9th of May, wired and also wrote the appellant that the car was rejected, giving as a reason therefor that it was brittle, checked, worm-eaten, water-soaked and dry-rotted. In response to the telegram, the appellant wired the appellee to have the car unloaded, and wrote the appellee to the effect that its customer was entirely in error in stating that the car was not up to grade, and requesting the appellee to have its customer go through the material carefully, lay out any pieces that it might consider not up to grade, and that appellant would do all possible to reconcile its views to meet the views of appellee's customer.

On May 17, 1922, the appellee wrote the appellant, stating that appellee had asked its customer to unload car and inspect the same, and that, in answer, the appellee's customer still insisted that the car had been inspected by it sufficiently to ascertain that it was off-grade; that appellee, on its own account, had asked its customer to unload the car in order to save demurrage, and requested the appellant to arrange for official inspection of the car, stating that, if such inspection proved the lumber to be up to the grade, appellee would accept it; otherwise, it would expect the appellant to make disposition of the car and return to the appellee the money it had paid on the car. On the 19th of May the appellee again wired the appellant, and also wrote, stating that the investigation developed that the car was not what

appellee ordered, and that its customer refused to handle the car; and offered its assistance to appellant to make the best disposition of the car possible, and concluding its letter as follows: "If you want us to have this car of oak unloaded for your account to stop demurrage, and desire to have it officially inspected, we will stand by the inspection and try to arrange for the unloading."

On May 20, 1922, the appellant responded, saying in effect that the appellant considered that the car was up to grade, according to the contract, and that appellee and its customer were wrong in the inspection, and, among other things: "We are arranging with the National Hardwood Lumber Association to send a national inspector to make an inspection, if we felt your customer was wrong in his inspection. * * * We are willing to abide by the decision of a National Hardwood Lumber Association inspector, party in the wrong to stand all costs attached thereto. * * * We are going to insist that you accept the above offer, namely, to abide the inspection of a national inspector, or that you pay us in full for the shipment."

On May 25 the appellee, in response, wrote to appellant, stating in substance that it had requested its customer to unload the car and to hold the same for inspection by the National Hardwood Lumber Association, and requested the appellant to arrange for prompt inspection. On June 14 the appellee notified the appellant that the lumber had been unloaded and was awaiting the inspection by the National Hardwood Lumber Association, and renewing its request that appellant promptly have the inspection made. On June 28 appellee wired the appellant to answer its letters of May 25 and June 14 in regard to inspection, and on July 10 the appellee again wired that it must have reply to wires and letters with reference to the car. On July 12 the appellee wrote the appellant urging it to have the inspection quickly made, in order that the matter might be adjusted, and again on July 18 urging the appellant to answer its wires

and letters, and again on 19th appellee wrote the appellant, stating that, up to the 12th, no inspector had reached Dallas, and asking of the appellant the courtesy of a reply, stating the steps appellant had taken, if any, looking to the inspection. On the 19th of July the appellee wrote to the National Hardwood Lumber Company Association (hereafter called association) stating the transactions and correspondence that had taken place between the appellee and the appellant, and inquiring of the association whether the appellant had taken any steps to have the inspection made, and whether the delay was caused by the inability of the inspector to reach Dallas, South Dakota. The association replied to the appellee's letter, saying that the inspection had not been ordered by the appellant.

On the 24th of July the appellee wired the appellant, asking the date and through whom the inspection of the car was ordered. Thereafter appellee wrote other letters to the appellant, urging him to prompt action and to make replies to its letters and telegrams. On August 5 the appellee wrote the association asking it whether the inspection was ordered and the date when it would be able to inspect, and also on the same day wrote the appellant urging prompt action and replies, and again on the 10th to the same effect, and stating that, if it didn't instruct the association to arrange for a prompt and immediate inspection, appellee would ask for an inspection, and that "if, upon inspection, the lumber was not up to grade, appellee would take the necessary steps to retrieve its loss." On August 9, one W. E. Robinson, who was the inspector of the association in that territory, wrote to the appellee notifying it that the appellant had made no request of him for inspection. Thereafter there was a correspondence between the appellee and the association in regard to the inspection, which shows that the appellee requested the association to make the inspection, and the association directed its agent in that territory to make the inspection at the expense of the

appellee, and that the inspection was made, and the appellee paid the expense thereof.

On October 4 the appellee wrote appellant, inclosing the amount of the expense of the inspection, and notifying it that appellee would draw on appellant for that sum, and stating that, if the draft was returned unpaid, it would immediately bring suit for its damages.

This action was instituted by the appellee against the appellant. The appellee alleged in substance that the appellant had failed to comply with its contract to ship a carload of lumber according to the order given by the appellee to the appellant, and that, by reason of such breach, the appellee had been damaged in sums amounting in the aggregate to $1,483.03, for which the appellee prayed judgment.

The appellant answered admitting that it had accepted the order of the appellee and had shipped the lumber, but denied specifically that it had not complied with its contract in every particular, and set up by way of cross-complaint that the carload of lumber shipped under appellee's order was priced at $1,383.39, on which the appellant had received an advance payment of $735, leaving a balance due of $648.39, for which the appellant prayed judgment.

The testimony adduced on behalf of the appellee was substantially as above set forth, and, on behalf of the appellant, there was testimony tending to show that the lumber was carefully inspected before shipment by the appellant and the man from whom the appellant purchased the lumber, and that the invoice of the lumber was correct, and that the lumber, when it was shipped by the appellant to the Smith Company, under the direction of the appellee, was in strict compliance with the order; that, if there was any red oak contained therein, as reported by the inspector of the association, and if the lumber was not otherwise up to grade, it was not the car shipped by the appellant.

The appellant testified to the effect that, in August, 1922, he wrote the appellee not to have the inspection by the association, that the appellant would not abide by it, and requested the appellee to have its customer go through the car and reject only the pieces not up to grade; that he mailed these letters to the appellee's address, with the appellant's return address on the corner of the envelope, and that said letters were never returned. The testimony on behalf of the appellee was to the effect that it did not receive these letters of the appellant saying that it would not abide by the decision of the inspector. There was testimony on behalf of the appellant to the effect that, if the lumber had been unloaded and stacked in May, unless it was properly stacked, it would be damaged by exposure to the weather, and that any damage or failure of the lumber to come up to the grade as shown by the inspection in September following would be the result of the exposure to the weather or improper handling of the lumber after its delivery at its destination. The appellant objected to the correspondence concerning the carload of lumber between the appellee and the Smith Lumber Company at Dallas, South Dakota, and also to the correspondence between the appellee and the association and its inspector. The appellant objected to the following language of the court's charge: ''The correspondence passing between these parties is identified by the defendant authorizing such inspection, that thereby created liability against the defendant in this case on the report of the inspector, and the only way that he can escape such liability is by establishing by a preponderance of the testimony his refusal to authorize such National Hardwood Lumber Dealers' Association inspector to make such inspection, and the burden is upon him to show the withdrawal of such proposition and such agreement.''

The appellant also objected to the following language in the concluding part of the fourth paragraph,

as follows: "In addition to that, the order must meet the size, it being dimension stuff." The appellant asked the court to instruct the jury as follows: "1. The jury are instructed that, although you may find from the testimony in this case that the plaintiff was very diligent in its correspondence, and that the said defendant did not answer a number of its letters, yet, under the law, his silence to said correspondence of the plaintiff, after a dispute had arisen between the plaintiff and the defendant as to the grade of the lumber, cannot be regarded as an admission of liability on the part of the said defendant." The court refused to give this instruction, to which ruling the appellant duly excepted. The appellant also asked the court to instruct the jury in effect that, if the appellant first agreed to an inspection by the association, and later, before an inspection was made, wrote the appellee that it would not abide by the inspection, and that such letter was posted by the appellant, properly addressed to the appellee and mailed in due course as other letters, then the burden would be upon the appellee to show that the letter was not received, and that, unless the appellee made this proof, it would not be entitled to recover the inspection fees, and would not be bound by the inspection, even though the lumber was found to be defective. The court refused this prayer, to which appellant duly excepted.

The jury returned a verdict in favor of the appellee in the sum of $1,515.33. Judgment was entered in appellee's favor for such sum, from which is this appeal.

1. The appellant's prayer for instruction No. 1 was argumentative, and the court did not err in refusing to grant such prayer. The court did not err in refusing to grant appellant's prayer for instruction No. 2. The undisputed testimony shows that the appellant agreed to be bound by an inspection of the association. In a letter of May 20 it says, among other things: "We are willing to abide by the decision of a National Hardwood Lumber Association inspector, party in the wrong to stand all

costs attached thereto.   *   *   *   We are going to insist that you accept the above offer, namely, to abide by the inspection of a national inspector, or that you pay us in full for the shipment.'' This proposition was definitely accepted by the appellee.   The undisputed evidence likewise shows that there was an inspection of the car by the association.

The appellant contends that, after the agreement for the inspection, but before it was made, it wrote a letter to the appellee in which it countermanded and withdrew from the agreement to inspect, which letter it addressed and mailed in due course to the appellee, and that, such being the case, the burden was thus placed on the appellee to prove that it did not receive the letter and that the agreement for inspection had not been recalled, and was still in force.   The phraseology of instruction No. 2, in which this theory and contention of the appellant is presented, was calculated to confuse and mislead the jury as to the burden of proof on the issue as to whether or not there was an agreement for inspection and whether or not the inspection was made by which the appellant and appellee were bound.   These issues were fully and correctly submitted to the jury in the oral instruction which the court gave, and which is, in part, as follows:   ''In addition to that, if you find that the defendant directed that this lumber be inspected by a man representing the National Hardwood Lumber Dealers' Association, and, in compliance with such directions, plaintiff procured a man to make such inspection, and the defendant agreed to be bound by that inspection, then he would likewise be liable for the expenses of the inspection for which the plaintiff must pay; unless you further find by a preponderance of the evidence that, after making such agreement, and expenses were incurred in connection with obtaining such inspection, he countermanded and refused to be governed by such inspection, and the burden is upon him to establish that. The correspondence passing between these parties is

identified and admitted by the defendant, authorizing such inspection; that thereby created liability against the defendant in this case on the report of the inspector, and the only way that he can escape such liability is by establishing by a preponderance of the testimony his refusal to authorize such National Hardwood Lumber Dealers' Association inspector to make such inspection, and the burden is upon him to show the withdrawal of such proposition and such an agreement."

The appellant also contends that the court erred in permitting the correspondence between the appellee and its customer, the Smith Lumber Company, and between the appellee and the association and its agent, Borgeson, and between the appellee and the appellant, to be introduced in evidence. In admitting the correspondence, the court instructed the jury in effect that it was not to be considered by them in determining whether or not the car of lumber in controversy was in compliance with the contract as to quality and quantity. With this restriction as to the correspondence, it was competent and relevant to show the transaction between the parties as to the order and shipment of the lumber. The principal issues in the case are whether or not the carload of lumber ordered by the appellee from the appellant for its customer was delivered, and whether or not the lumber was in compliance with the order. There was no dispute, as we understand the evidence, about the dimensions. The issues upon the facts were submitted to the jury under correct instructions, and its verdict on these issues is conclusive here against the appellant.

We find no error in the record, and the judgment is therefore affirmed.